Deborah R. WALLACE, Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION, Defendant.

Civil Action No. H-99-78.

United States District Court, S.D. Texas.

Aug. 1, 2000.

Ulmer Graydon Wilson, Houston, TX, for Plaintiff.

Elizabeth F. Karpati, Assistant U.S. Attorney, Houston, TX, for Defendant.

Opinion for Dismissal

HUGHES, District Judge.

1. *Background.*

Deborah R. Wallace worked as an insurance specialist at the Social Security Administration's district office in Pasadena, Texas, from 1975 through 1996. In 1991, she was in a wreck that left her with recurring migraine headaches. She began taking off time from work because of the headaches. In 1993, Wallace requested variable time—allowing her to come and go as she pleased. The agency rejected this request and instead offered Wallace the option of working part-time. Wallace refused. She complained to the Equal Employment Opportunity Commission saying the agency discriminated when it did not allow her variable time. The commission found that the agency did not discriminate, and Wallace sued. Before the commission ruled, Wallace was granted disability retirement through the retirement program for civil servants because she could not "work effectively" with headaches.

2. *Chronology.*

1975 Wallace hired at the Social Security Administration.

October 1991 Wallace's headaches begin.

Jan.—Aug.1993 Wallace on restricted leave for too much time off.

December 1993 Wallace requests variable time.

March 1994 The agency offers part-time employment; Wallace rejects.

May 1994 Wallace files a complaint of discrimination.

March 1996 Wallace applies for disability retirement.

June 1996 OPM approves disability retirement, and Wallace quits.

July 1996 Hearing officer finds no discrimination.

September 1996 The commission adopts the decision of the hearing officer.

December 1998 The commission's board of appeals affirms the decision.

January 1999 Wallace sues in the United States District Court.

3. *Rehabilitation Act.*

Wallace sued her agency under a federal law that prohibits discrimination against employees with disabilities in federally funded programs. As a full-time federal employee, Wallace was covered by this law. It uses the same standards as the statute that applies to ordinary citizens who are employed by an enterprise affecting interstate commerce; that is, the Rehabilitation Act has the same standard as the American's with Disability Act.

These laws require that a federal employer cannot discriminate against a person with a disability who is otherwise qualified. The claim of discrimination has four elements: (1) the employee has a disability; (2) the employee is otherwise qualified to do the work; (3) the employee is being excluded from her job solely because of her disability; and (4) the program receives federal funds. The employee has a disability if she has a physical impairment that substantially limits her life activities. To be "otherwise qualified" a person must be able to perform the essential functions of the job with no more than a reasonable accommodation. See 29 U.S.C. § 794(d). 29 U.S.C. § 794(d). 29 U.S.C. § 706(8). 42 U.S.C. § 12111(9)(B).

4. *Civil Service Retirement System.*

The federal system of retirement benefits says that a civil service employee is entitled to retire early because of a disability when the employee is unable to work efficiently because of that disability and is not qualified to reassignment for a vacant position within the agency at the same level. 5 U.S.C. § 8337(a). The employee cannot work successfully if she

cannot perform acceptably the essential elements of the job with satisfactory attendance. 5 U.S.C. § 8337(a).

### 5. *The Job.*

Wallace's job at the agency required regular attendance because she had appointments with elderly and disabled clients. Her attendance had to be predictable so that the citizens whom she served could schedule their trips to the field office. She was a claims representative who determined the benefits a person received. Wallace was paid to meet five to six times a day with citizens who had scheduled conferences. She earned over $44,500.

■ Three types of scheduling may have allowed her to work with headaches:
- part time—regular, but fewer hours
- flexible time—specified hours varying from normal business hours
- variable time—hours selected irregularly and spontaneously.

Wallace requested the third. The agency offered her part-time instead. She refused and sued the agency for discrimination.

### 6. *Contradiction.*

Wallace has represented to the government that (a) she can work with only a reasonable accommodation, and (b) she cannot work with reasonable effectiveness at that job. At her request and on her representations, the Office of Personnel Management has concluded that she is unable to work. Simultaneously she is representing to this court that she could do the work with only an adjustment of conditions that would not destroy her efficiency. Both cannot be true.

Wallace precluded her discrimination claim by accepting disability retirement. When she requested variable time, she said that she could work but only irregularly; however, when she applied for disability retirement, she swore that she could not work at her job even with an accommodation. Wallace's admission—

and her acceptance of the benefits of disability retirement—determines that she is not otherwise qualified. It is as if she sued one branch of the government claiming that the sole cause of her termination was age discrimination and sued another branch claiming that the sole cause was its hostility to her religious persuasion. Either of her assertions may be true, but both cannot be true.

### 7. *Justification.*

Wallace explained her contradiction by saying that if the agency had given her variable time, she would have been able to continue working, making her application for disability retirement unnecessary. The laws do not guarantee Wallace her choice of permanent pay systems. The laws oblige the government to pay her only if she meets independent criteria, like really working or truly being unable to work. When she meets none of the standards, she is not paid. The discrimination claim is contra-factual if her disability retirement claim is factual. An argument from necessity implies an absence of formal, lawful justification.

She also has said that the agency refused to grant the variable time to force her to take disability retirement. The accommodation is either reasonable or not. If the agency refused her an *un*reasonable accommodation, it does not matter what other choices "they" hoped she might make and vice versa.

### 8. *Accommodation.*

■ The workplace—especially a governmental one—should be free of arbitrary impositions, but requiring employees to earn their pay, requiring them to work in the public interest is not arbitrary. An accommodation is unreasonable when it conflicts with the legitimate, articulable requirements of the agency in fulfilling its mission. Attendance at the office for scheduled claims meetings was essential. Wallace's appointments needed to be kept to prevent waste—as well as waiting and

frustration. When Wallace missed meetings because of her headaches, other agents had to fit the appointments into their schedules, and the least-able people had to wait or come back. The agency was not required to grant variable time because the job was not one that could be done responsibly without a minimal schedule.

9. *Conclusion.*

The case will be dismissed because Wallace's acceptance of disability retirement through the CSRS established that she was not otherwise qualified under the ADA and that there was not a reasonable accommodation that would allow her to work at the agency.

Order of Dismissal

This case is dismissed.